587 P.2d 1352

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Charles DAVIS, Defendant-Appellant.**

**No. 3492.**

Court of Appeals of New Mexico.

Nov. 21, 1978.

Writ of Certiorari Denied Dec. 15, 1978.

William C. Marchiondo, Marchiondo & Berry, P. A., Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Donald D. Montoya, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Convicted of conspiring to have a public officer or public employee solicit or accept a bribe, defendant appeals. We reverse because the evidence is insufficient to sustain the conviction. We review the pleadings and the evidence to show what was *not* submitted to the jury, and to illustrate the limited charge that was submitted. We also review the evidence to show its insufficiency as to the limited charge submitted.

The object of the alleged conspiracy involved a public officer or public employee. That public officer or public employee was Ortiz who was executive director and chairman of the Employment Security Commission. Cottrill was in the insurance business. Davis was an acquaintance of both Ortiz and Cottrill.

There are two statutes involving the bribery of a public officer or public employee. Section 40A–24–1, N.M.S.A.1953 (2d Repl. Vol. 6) states bribery *of* such an official:

[C]onsists of any person giving or offering to give, directly or indirectly, anything of value to any public officer or public employee, with intent to induce or influence such public officer or public employee to:

* * * * * *

D. execute any of the powers in him vested; or

E. perform any public duty otherwise than as required by law . . . .

Section 40A–24–2, N.M.S.A.1953 (2d Repl. Vol. 6) states that bribery *by* such an officer:

[C]onsists of any public officer or public employee soliciting or accepting, directly or indirectly, anything of value, with intent to have his decision or action on any question, matter, cause, proceeding or appointment influenced thereby, and which by law is pending or might be brought before him in his official capacity.

The crime of conspiracy is defined in § 40A–28–2, N.M.S.A.1953 (2d Repl. Vol. 6) to consist "of knowingly combining with another for the purpose of committing a felony". For there to be a "knowing combination", there must be a common design or agreement which may be no more than a mutually implied understanding. This mutually implied understanding may be established by circumstantial evidence. *State v. Thoreen*, 91 N.M. 624, 578 P.2d 325 (Ct.App. 1978).

There is evidence that Cottrill sold bogus workmen's compensation insurance policies to the State. He also sold a valid policy insuring the Economic Security Commission Building and a valid policy of "police professional liability" insurance covering a number of political subdivisions. Other than as evidentiary items, neither the validity nor invalidity of these policies was involved in the subsequent criminal proceedings.

There is evidence that Davis solicited, and Cottrill agreed to pay to Davis, a portion of Cottrill's commissions on the insurance policies. The evidence is uncontradicted that Cottrill did pay money to Davis. Most of these payments were made soon after Cottrill received payment from the State in connection with the insurance policies. According to Cottrill, these payments were in exchange for Davis' "influence" in connection with State insurance business and also, according to Cottrill, the payments were for Davis and Ortiz.

There is evidence that Davis solicited, and Cottrill agreed to, a loan of $10,000. This loan was to Davis but was for the benefit of Ortiz. According to Cottrill, he made the loan "to continue doing business and keep the ongoing relationship".

The grand jury indictment, subsequently quashed, see *Davis v. Traub*, 90 N.M. 498, 565 P.2d 1015 (1977), charged six offenses against Davis and Ortiz. Five of the counts charged bribery *by* Ortiz, aided and abetted by Davis, in violation of § 40A–24–2, supra. Four of these five counts involved payments made in connection with insurance policies; one involved the $10,000 loan. The only charge in the indictment involving bribery *of* a public officer or public employee in violation of § 40A–24–1, supra, was a conspiracy count. The conspiracy count charged that Ortiz and Davis combined with Cottrill for the purpose of violating either § 40A–24–1, supra, or § 40A–24–2, supra.

After the grand jury indictment was quashed, a criminal information was filed against Ortiz and Davis. The information had five counts. Four of the counts charged bribery *by* Ortiz, aided and abetted by Davis, in violation of § 40A–24–2, supra. One of the four counts went to the $10,000 loan. These four counts were among the five substantive counts of the quashed indictment.

The fifth count of the information, a conspiracy charge, enlarged the conspiracy charged in the indictment by charging a conspiracy between Davis and Ortiz or, alternatively, a conspiracy between Ortiz, Davis, and Cottrill. The conspiracy charged was to violate either § 40A–24–1, supra, or § 40A–24–2, supra.

Subsequently an amended criminal information was filed. The counts were now down to four. Three of the counts charged Ortiz and Davis of violating § 40A–24–2, supra. The fourth count charged conspiracy, either between Ortiz and Davis, or between Ortiz, Davis, and Cottrill, to violate § 40A–24–2, supra.

The case went to trial on the four counts of the amended criminal information. As amended, there was no charge of violating § 40A–24–1, supra. The conspiracy charged in the amended information still alleged in the alternative as to the participants in the conspiracy; however, the charged conspiracy no longer alleged a conspiracy *to* bribe Ortiz. The alleged conspiracy was a conspiracy to have Ortiz demand or accept a bribe.

At the close of the State's case-in-chief, the trial court dismissed two of the four counts being tried. These dismissals involved the payments made by Cottrill in connection with the insurance policies. After these dismissals, the alleged "kickback" scheme in connection with Cottrill's insurance commissions was no longer in the case. After these dismissals, two charges remained—a bribery charge against Ortiz and Davis in connection with the $10,000 loan, and a conspiracy charge against Ortiz and Davis. In addition, the trial court dismissed the conspiracy charge against Ortiz.

As a result of the dismissals referred to in the preceding paragraph, only three charges were submitted to the jury. One of the three charges accused Ortiz of soliciting or accepting the $10,000 loan in violation of § 40A–24–2, supra, and one charge accused Davis of aiding and abetting Ortiz. The jury acquitted Davis and Ortiz of these charges. The third charge submitted was the conspiracy charge, modified to reflect the dismissal of that charge against Ortiz.

The conspiracy charge submitted to the jury was that Davis and Cottrill agreed to have Ortiz solicit or accept the $10,000 loan.

The jury convicted Davis of this charge. We quote the instruction in its entirety because it aids in understanding the contentions of the parties on appeal.

The instruction reads:

For you to find the defendant Charles Davis guilty of knowingly combining with Richard M. Cottrill for the purpose of committing the crime of demanding or receiving a bribe by a public officer or public employee as charged in Count IV of the Amendment Information, the State must prove to your satisfaction and beyond a reasonable doubt each of the following elements of the crime:

1. That Rudy A. Ortiz was a public officer or public employee.

2. The defendant Rudy A. Ortiz did solicit or accept, directly or indirectly, a thing of value, a $10,000.00 loan, with the intent to have his decision or action on any question, matter, cause, proceeding, or appointment influenced thereby.

3. That there was pending before Rudy Ortiz at the time in question a decision or action on any question, matter, cause, proceeding, or appointment which might be brought before him in his official capacity, to wit: the granting of insurance business of the State to Richard M. Cottrill.

4. That the defendant Charles Davis and Richard M. Cottrill by words or acts agreed together to have Rudy Ortiz solicit or accept, directly or indirectly, a thing of value, to wit: a $10,000.00 loan with the intent that his decision on said matter would be influenced thereby.

5. That the defendant Charles Davis and Richard M. Cottrill had the specific intent to commit the crime of demanding or receiving a bribe by a public officer or public employee.

6. That this agreement was entered into between May 1975 and January 30, 1976.

■ Our conspiracy statute, § 40A–28–2, supra, does not require an overt act in connection with the conspiracy. Conspiracy in New Mexico is complete when the prohibited agreement is reached. See 1 Wharton's Criminal Law & Procedure (Anderson), § 86 (1957). Thus, it is puzzling that the conspiracy instruction required the jury to find that *Ortiz* committed bribery by, in effect, violating § 40A–24–2, supra. See paragraphs 2 and 3 of the conspiracy instruction.

Davis contends that having acquitted Ortiz of the substantive charge of violating § 40A–24–2, supra, it was inconsistent for the jury to find that Ortiz did commit that offense in connection with the conspiracy. This argument is not predicated on an inconsistency, generally, between a substantive offense and a conspiracy to commit the substantive offense. Rather, Davis' contention is based on an asserted inconsistency as a result of the conspiracy charge submitted to the jury in this case. We do not answer this contention; however, see *State v. Leyba*, 80 N.M. 190, 453 P.2d 211 (Ct.App.1969) and *United States v. Lester*, 363 F.2d 68 (6th Cir. 1966).

Davis points out that § 40A–28–2, supra, requires a combination of persons "for the purpose of committing a felony". Once the conspiracy charge against Ortiz was dismissed, no public officer or public employee was charged with conspiracy to violate § 40A–24–2, supra. Neither Cottrill nor Davis were public officials or public employees; they could not have violated § 40A–24–2, supra. Davis argues that since he could not have violated § 40A–24–2, supra, he could not have conspired to violate that section. We do not answer this contention, but note that the federal statute requiring a conspiracy to commit an offense against the United States has been held to include a conspiracy to cause such an offense to be committed. *United States v. Lester*, supra; see *Joyce v. United States*, 153 F.2d 364 (8th Cir. 1946).

■ Davis contends the evidence is insufficient to sustain the conviction. The State argues that Davis did not challenge the sufficiency of the evidence. We disagree; Davis' brief states: "There is *no* evidence that Cottrill and Davis conspired 'to have Rudy Ortiz solicit or accept . . . a

$10,000 loan with the intent that his decision on said matter would be influenced thereby' ".

In considering the sufficiency of the evidence we note what is *not* involved. 1. The conspiracy charge does not involve the alleged kickback scheme in connection with Cottrill's insurance commissions; the conspiracy charge involves only the $10,000 loan made by Cottrill. 2. The conspiracy instruction states the agreement must have been entered between May, 1975 and January 30, 1976. These dates mix up the evidence of a conspiracy in connection with the alleged kickback scheme and evidence of a conspiracy in connection with the loan. There is no evidence of a conspiracy in connection with the loan prior to December 9, 1975. 3. The charge was *not* that Cottrill and Davis conspired to *offer* Ortiz the loan as a bribe; the charge was that Cottrill and Davis conspired to have Ortiz solicit or accept the loan as a bribe.

The evidence is uncontradicted that Ortiz had borrowed money from Davis prior to any dealings between Davis and Cottrill in connection with insurance policies and, thus, prior to the time of Cottrill's $10,000 loan. The evidence is uncontradicted that Ortiz was in need of money. Cottrill testified that on October 9, 1975 at the time he made a payment to Davis in connection with an insurance policy, "Mr. Davis stated to me that 'Rudy Ortiz is in desperate need of money and he has to have this money, and that's why we are asking for this money.' "

On December 8, 1975 Cottrill made a payment to Davis in connection with the workmen's compensation insurance policies. On December 9, 1975 Cottrill received and deposited warrants from the Economic Security Commission in payment of the premiums on the workmen's compensation policies. After depositing the warrants, according to Cottrill, Davis went to Cottrill's office and said:

"Rudy Ortiz is in desperate need of money and he has to have twenty-five thousand dollars immediately, and we would

like for you to loan him"—or "I would like for you to loan him some money."

\* \* \* \* \* \*

This discussion lasted for some several minutes. Charlie [Davis] said, "Well, I am going to loan Rudy fifteen thousand dollars. He needs twenty-five. If you will loan him ten thousand dollars, I will give you my note for thirty days, and we will have your money back to you in thirty days from now."

Cottrill loaned $10,000 to Davis to "keep the ongoing relationship". Davis borrowed $15,000 from a bank and loaned $25,000 to Ortiz. These loans were made on December 9, 1975.

Ortiz received $25,000 from Davis and deposited $21,800 of the money into his bank account on December 9, 1975. The evidence is uncontradicted that Ortiz had an overdraft in his bank account of approximately $21,200. According to Ortiz, he received a telephone call from the bank on December 9, 1975 informing him that the overdraft had to be taken care of because an audit of the bank was to start the following day, and the bank did not want that " 'big overdraft on our account, so do something about it.' " According to Ortiz, after receiving the call from the bank, he immediately called Davis and told Davis that he needed $25,000 to cover an overdraft. According to Davis, he contacted Cottrill for a $10,000 loan after receiving Ortiz' telephone call.

■ We assume that the above evidence, together with the evidence of the dealings between Cottrill, Davis, and Ortiz after the loan was made, would support an inference that Cottrill and Davis conspired to loan $10,000 to Ortiz as a bribe, but that is not the charge. The charge is that Cottrill and Davis conspired "to have Rudy Ortiz solicit or accept, . . . a $10,000.00 loan". The evidence *does not support such a conspiracy*. The evidence is uncontradicted that Ortiz was trying to borrow $25,000 before Cottrill and Davis discussed Cottrill's loan of $10,000. Any agreement between Cottrill and Davis in connection with Cottrill's loan of $10,000 was not an agreement "to have

Rudy Ortiz solicit or accept," because Ortiz had already solicited and by that solicitation had indicated his willingness to accept a loan (his uncontradicted mental state) before Cottrill and Davis discussed a loan to Ortiz.

The judgment and sentence are reversed. Because the reversal is for insufficient evidence, the cause is remanded with instructions to dismiss the conspiracy charge which was submitted to the jury. *State v. Mal-ouff,* 81 N.M. 619, 471 P.2d 189 (Ct.App. 1970).

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.