2005-NMCA-072

114 P.3d 379

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Carlos J. MALDONADO, Defendant–
Appellant.**

**No. 23,637.**

Court of Appeals of New Mexico.

April 20, 2005.

Certiorari Granted, No. 29,206,
June 6, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, Steven S. Suttle, Assistant Attorney General, Albuquerque, for Appellee.

John B. Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

ALARID, J.

### PROCEDURAL HISTORY

{1} Defendant was charged by grand jury indictment with conspiracy to commit trafficking in methamphetamine by manufacturing, contrary to NMSA 1978, §§ 30–28–2 (1979) and 30–31–20(A)(1) (1990); or alternatively, with attempted trafficking in methamphetamine by manufacturing, contrary to NMSA 1978, § 30–28–1 (1963) and Section 30–31–20(A)(1). Defendant filed a motion to quash the indictment, arguing, inter alia, that the Legislature intended the conduct charged in the indictment to be punished as either possession of drug paraphernalia pursuant to NMSA 1978, § 30–31–25.1 (2001) or as possession of drug precursors pursuant to NMSA 1978, § 30–31B–12(A) (2004). Defendant ultimately abandoned the argument based on the drug precursor statute. The district court denied Defendant's motion to quash the conspiracy count, concluding that tablets containing pseudoephedrine are not drug paraphernalia. The district court granted Defendant's motion to quash the attempted trafficking count, reasoning that Defendant's actions were "mere preparatory acts and not an overt act in furtherance of the crime alleged."

{2} The case proceeded to trial on the conspiracy count. Testimony by the State's witnesses established that on July 27, 2001, a private security officer at a Wal–Mart store in Las Cruces, New Mexico, observed Defendant concealing in his trousers the contents of four boxes of medicine, each containing 96 non-prescription pseudoephedrine tablets in blister packaging. Defendant purchased an additional box of tablets. When Defendant left the store without paying for the four concealed boxes of tablets, the security officer detained Defendant and called the police. Mark Sanchez, a Dona Ana County deputy sheriff assigned to the Las Cruces/Dona Ana County Metro Narcotics division, responded. Agent Sanchez advised Defendant of his *Miranda* rights. Defendant agreed to talk with Agent Sanchez.

{3} According to Agent Sanchez, Defendant told him that he had heard that the tablets could be used to manufacture methamphetamine. Agent Sanchez recalled Defendant telling him that Defendant had planned to sell them to a person named "Guero" for five dollars a box. Defendant denied manufacturing methamphetamine or using the drug. According to Agent Sanchez, Defendant admitted that he had sold tablets to Guero in the past and that he was aware that Guero used the tablets to manufacture methamphetamine. According to Agent Sanchez, Defendant told him that Guero would call "out of the blue," asking if Defendant had any tablets to sell. In the course of his investigation, Agent Sanchez was unable to locate Guero.

{4} After the close of the State's case-in-chief, Defendant moved for a directed verdict. Defense counsel argued that:

> I think getting the pills to give to Guero, knowing what he's going to do with them is different from saying the defendant and Guero had an agreement to manufacture methamphetamine together, which is what the State has to prove. And they don't have evidence of that. Right now, it's an arm's length transaction. That's all they have. They've got an arm's length transaction.

The district court denied Defendant's motion for a directed verdict, reasoning as follows:

> Well, you're implying some kind of financial interest in the operation above and beyond the profit on the pills. I don't see that as an element in trafficking, not under the UJI. I think the fact that he stated that he had done this in the past, the jury could infer that he's part of this operation.
>
> . . . .

Or they could decide that there is not—that the State hasn't proved its elements beyond a reasonable doubt, which are arguments going to the weight of evidence, not the sufficiency of the evidence.

{5} Defendant testified in his defense that:

I happened to see the pills, and I just remembered that I knew somebody that would give me some money for them. So I just—I was—I bought the box because that's all I could afford. Then I took the rest.

When asked how he came up with the plan for selling the tablets, Defendant testified that:

I was just visiting the guy that I know Danny, and I happened to meet his little brother [Guero], and he told me if I ever ran into these pills, he'd give me like two or three dollars more for them.

{6} Defendant denied having previously sold tablets to Guero. Defendant denied telling Agent Sanchez that he was aware that the tablets were used to make methamphetamine. Defendant denied having a plan with Guero to manufacture methamphetamine. On cross-examination, Defendant conceded that it was "strange" that Guero was willing to pay Defendant more than the tablets cost. Defendant again denied having told Agent Sanchez that he knew that pseudoephedrine was used to make methamphetamine.

{7} At the conclusion of the presentation of evidence, defense counsel requested an instruction on possession of drug paraphernalia. The State objected. The district court refused the instruction, explaining that the State had not charged Defendant with possession of drug paraphernalia and that "[the court] can't give an instruction on something that has not been charged." The jury was instructed on the offense of conspiracy to traffic in methamphetamine by manufacture. The jury returned a verdict of guilty on the charge of conspiracy to traffic in methamphetamine by manufacture. Defendant appeals. We reverse.

## DISCUSSION

{8} After this case was assigned to a panel, we sua sponte requested briefing on the question of whether the conduct proved by the State falls within the statutory definition of conspiracy. We did so to explore a matter implicating fundamental rights of an accused: whether Defendant's conviction rests on evidence of conduct that does not constitute a crime. *See State v. Maes,* 2003–NMCA–054, ¶ 5, 133 N.M. 536, 65 P.3d 584; *State v. Gabriel M.,* 2002–NMCA–047, ¶ 9, 132 N.M. 124, 45 P.3d 64.

{9} Defendant's conviction presents a recurring question in the law of conspiracy: does a defendant whose only involvement is supplying generally available goods or services become a co-conspirator merely because he knows that the goods or services he provides may or will be used by another for a criminal purpose? *See generally* 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.2(c)(3) (2003). This is a question of statutory construction, subject to de novo review. *See State v. Barragan,* 2001–NMCA–086, ¶ 22, 131 N.M. 281, 34 P.3d 1157 (recognizing that review of the sufficiency of the evidence supporting a conviction may require a court to engage in statutory construction in determining whether evidence viewed in the light most favorable to the State constituted the charged offense); *State v. Rael,* 1999–NMCA–068, ¶ 5, 127 N.M. 347, 981 P.2d 280 (recognizing that review of a district court's denial of a motion for directed verdict may turn upon resolution of matters of statutory interpretation, subject to de novo review).

{10} New Mexico law defines the crime of conspiracy as "knowingly combining with another *for the purpose of committing a felony* within or without this state." Section 30–28–2(A) (emphasis added).[1] Our Su-

---

1. The Legislature enacted the predecessor to Section 30–28–2 in 1919. 1919 N.M. Laws ch. 31, § 1, ch. 31, § 1 provided:

    Any person or persons who shall knowingly combine with any other person or persons for the purpose of committing a felony, within or without this state; or any person or persons who shall knowingly unite with any other person or persons, whose object is the commission of a felony or felonies, within or without this state, shall, on conviction, be fined not less than twenty-five dollars, nor more than five

preme Court has interpreted this statute to require proof of two mental states: (1) the intent to agree and (2) the intent to commit the offense that is the object of the conspiracy. *State v. Trujillo,* 2002–NMSC–005, ¶ 62, 131 N.M. 709, 42 P.3d 814. No New Mexico case has considered whether the twin intent requirements of a conspiracy can be established by evidence that the defendant agreed to sell goods to another, knowing that the other might use the goods for an illegal purpose.

{11}  We are reluctant to extend Section 30–28–2(A) to an otherwise lawful sale of goods. It is not at all clear to us that in ordinary usage a seller "agrees" with a purchaser's intended use of goods or services simply by engaging in an arm's length sale. Similarly, we are not persuaded that a defendant-seller shares a purchaser's intent to commit a crime merely because the defendant had knowledge of the purchaser's intended use of those goods or services at the time of the sale. In this context, knowledge of the other's criminal objective is not necessarily equivalent to an intention to bring about the objective. 1 LaFave, *supra,* § 5.2(b), at 342–43 n. 9 (citing conspiracy as an area of criminal law where there may be "good reason" for distinguishing between knowledge and intent); 2 LaFave, *supra,* § 12.2(c)(3) at 280 (observing that intent rather than mere knowledge of the unlawful object is usually required to establish a conspiracy). As Judge Hand aptly observed in reversing convictions for conspiring to operate an illegal still:

> It is not enough that [the defendant] does not forego a normally lawful activity, of the fruits of which he knows that others will make an unlawful use[.] ... We may agree that morally the defendants at bar should have refused to sell to illicit distillers; but, both morally and legally, to do so was toto coelo different from joining with them in running the stills.

*United States v. Falcone,* 109 F.2d 579, 581 (2d Cir.1940) (rejecting the argument that sellers of sugar, yeast, and five-gallon cans became conspirators with the buyers merely because the sellers knew that the buyers intended to use the goods to illegally distill liquor), *aff'd,* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940); *see also Jacobs v. Danciger,* 328 Mo. 458, 41 S.W.2d 389 (1931) (holding that a contract for the sale of brewing hops is not rendered unenforceable on the ground of illegality by the seller's knowledge that the buyer intended to resell the hops in kits to be used in the manufacture of "home brew"; rejecting the argument that the seller's "mere knowledge" of the buyer's intended use was sufficient to establish the vendor's participation in a conspiracy to violate the National Prohibition Act).

{12}  In the present case, a rational factfinder could have found that Guero offered to purchase over-the-counter medications containing pseudoephedrine from Defendant at two or three dollars above the retail price of the drugs; that on one or two prior occasions Defendant sold tablets containing pseudoephedrine to Guero; that Defendant was aware that over-the-counter medications containing pseudoephedrine were used to manufacture methamphetamine; that Defendant believed that Guero manufactured methamphetamine; and that Defendant was in possession of approximately 500 tablets containing pseudoephedrine that Defendant intended to sell to Guero.

{13}  Section 30–28–2(A) does not clearly and unequivocally alert a person in Defendant's position to the possibility of prosecution and punishment for conspiracy to manufacture methamphetamine. The rule of lenity constrains us "to narrowly construe a penal statute to give clear and unequivocal warning in language that people generally would understand concerning actions that would expose them to penalties." *Gabriel M.,* 2002–NMCA–047, ¶ 20, 132 N.M. 124, 45 P.3d 64. We are confronted with "an insurmountable ambiguity ... regarding the intended scope" of Section 30–28–1(A). *State v. Davis,* 2003–NMSC–022, ¶ 14, 134 N.M. 172, 74 P.3d 1064 (observing that the rule of lenity should be applied after other principles of statutory construction fail to eliminate a reasonable doubt as to legislative intent).

thousand dollars, or imprisoned in the state prison not less than one year nor more than

fourteen years, or both in the discretion of the court.

We hold that the phrase "knowingly combining with another for the purpose of committing a felony" does not criminalize the conduct proved by the State in this case.

{14} Our opinion should not be understood as invariably insulating suppliers of goods or services from liability for conspiracy. In appropriate cases, evidence of otherwise lawful sales of goods or services combined with other factors may suffice to demonstrate the defendant's purposeful combination with the buyer in unlawful conduct. Cf. Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943) (distinguishing Falcone, 109 F.2d 579; upholding conspiracy conviction of vendor of morphine sulphate). Our opinion also should not be understood as suggesting that the Legislature lacks the power to criminalize sales of goods or services when the seller knows that the purchaser intends to use the goods or services to commit a crime.[2]

{15} We offer a few comments in response to Judge Sutin's dissent.

{16} The concept of substantial evidence is meaningless unless it is linked to a specific definition of a crime. Expand the definition of the crime and evidence that might otherwise be insufficient becomes "substantial." A court cannot decide whether the State has come forward with substantial evidence of a conspiracy without expressly or implicitly engaging in statutory construction of the conspiracy statute. Defining the outer boundary of the statute prior to conducting substantial evidence review is particularly important where, as here, the prosecution's theory of its case pushes the concept of conspiracy to its theoretical limits.

{17} A trial court "has the right, and it is its duty," to withdraw a case from the jury and direct a verdict for a defendant when the State has failed to come forward with substantial evidence that the defendant committed the offense charged. State v. Tipton, 57 N.M. 681, 682, 262 P.2d 378, 378 (1953). When a trial court improperly fails to direct a verdict for the defendant it is our responsibility to correct the error by doing on appeal what the trial court failed to do at trial, and we are not precluded from correcting the trial court's error in even submitting the case to the jury by the fact that a jury has found against the defendant.

{18} As Falcone and Direct Sales Co. demonstrate, there is no clear consensus as to whether the crime of conspiracy has been defined to criminalize the state of mind of a defendant who sells available goods to another knowing that the purchaser will use the items for a criminal purpose. The important question in this case, in our view, is not whether Judge Hand's decision in Falcone or Justice Rutledge's opinion in Direct Sales Co. represents the better view, nor is it whether as a matter of public policy the legislature ought or ought not penalize as a conspiracy the type of conduct at issue in this case. Rather, the dispositive question is whether the language employed by the Legislature clearly evinces an intention to extend the definition of conspiracy to the conduct at issue in the present case. This is a question of statutory construction which it is the duty of courts,[3] not juries, to resolve: "Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime." Griffin v. United States, 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (emphasis added).

{19} Judge Sutin would have the reader of his dissent believe that he is merely engaging in substantial evidence review. In reality, the dissent turns upon its implicit adoption of a relaxed definition of the state of

---

2. We note that at least two states have adopted criminal facilitation statutes that clearly and unequivocally eliminate the requirement that the defendant share the co-conspirator's intent to commit a crime. Ky.Rev.Stat. Ann. § 506.080 (Michie 1995); N.Y. Penal Law, §§ 115.00 to 115.08 (McKinney 2004).

3. Juries do not work from the actual language adopted by the Legislature; they are provided with paraphrases of the Criminal Code in the form of UJIs approved by the Supreme Court. As with any paraphrase, there is the danger that the meaning communicated by the original text will be lost.

mind required to establish a conspiracy and the importation of this definition into Section 30–28–2. In the guise of deferring to hypothesized jury inferences, the dissent blurs the crucial distinction between merely *knowing* that the purchaser may commit a felony and sharing the purchaser's *purpose* to commit a felony. The dissent tailors the law of conspiracy to fit the State's evidence.

{20} We emphasize that we are not asserting that Judge Hand's approach as articulated in his opinion in *Falcone* necessarily represents the better view (although it does have the virtue of maintaining a clear distinction between knowing and intentional conduct).[4] We merely recognize that Judge Hand's approach represents a view of the state of mind required to establish the crime of conspiracy that is entirely reasonable and that is at least as valid as the approach taken by the Supreme Court in *Direct Sales Co.* As far as we can tell, there is no legislative history to speak of to shed light on the meaning of Section 30–28–2. Traditional rules of statutory construction do not compel us to choose one approach over another. In such a case, the rule of lenity directs us to resolve doubts in favor of the accused by applying the narrower definition of the offense to the defendant. Our application of the rule of lenity to ambiguous statutory language does not, of course, preclude the Legislature from responding to our construction by enacting a statute that eliminates the statutory ambiguity and that unequivocally criminalizes the conduct in question.

{21} For the reasons set forth above, we reverse Defendant's conviction.

{22} **IT IS SO ORDERED.**

ROBINSON, J., concurs.

SUTIN, Judge (dissenting).

4. The dissent seems to us to overstate the degree to which the Supreme Court in *Direct Sales Co.* qualified *Falcone.* Consider the following language from *Direct Sales Co.*:
   A considerable degree of carelessness coupled with casual transactions is tolerable outside the boundary of conspiracy. There may be

SUTIN, Judge (dissenting).

{23} I fall readily in line with Judge Learned Hand's general concern, expressed in *United States v. Falcone,* about "prosecutors [who] seek to sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders." 109 F.2d 579, 581 (2d Cir.1940), *aff'd,* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). "That there are opportunities of great oppression in such a doctrine is very plain." *Falcone,* 109 F.2d at 581. New Mexico's conspiracy statute, NMSA 1978, § 30–28–2(A) (1979), provides elastic substance for prosecutorial overreach. However, I am unable to concur in the majority's approach and result.

{24} I agree that, with no history of similar transactions, a court might hold that, as a matter of law, a seller of innocent goods cannot be prosecuted for merely knowing that the goods sold will be used for a felonious purpose. But the evidence in the present case of past transactions permits a jury to reasonably infer the intent necessary to convict. Thus, the issue on review becomes one of sufficiency of the evidence. I do not see how the majority can draw lines where it does both on the facts and the applicable standard of review with the historical evidence. Nor do I think the cases the majority cites in support of the de novo standard of review, involving statutory interpretation with invocation of the rule of lenity used to reach the result the opinion reaches, should be employed in this case.

{25} In this case the majority focuses on the Second Circuit's opinion in *Falcone. See* Majority Opinion ¶ 11. The majority's purpose appears to be the same as that stated by the Second Circuit in *Falcone* as being to circumscribe the scope of "comprehensive indictments" in order to avoid the "opportunities of great oppression" created by conspiracy statutes. *Falcone,* 109 F.2d at 581; *see* Majority Opinion ¶¶ 11, 13. I do not read

also a fairly broad latitude of immunity for a more continuous course of sales, made either with strong suspicion of the buyer's wrongful use or with knowledge, but without stimulation or active incitement to purchase.
319 U.S. at 712 n. 8, 63 S.Ct. 1265.

the Second Circuit *Falcone* case, particularly as discussed in the United States Supreme Court in both *Falcone*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128, and *Direct Sales v. United States*, 319 U.S. 703, 705–13, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943), as persuasive authority under our facts.

{26} The subject of Judge Hand's concern in *Falcone* was the sale of lawful goods such as sugar and yeast to distillers operating illicit stills. 109 F.2d at 580. The Second Circuit stated the question to be "whether the seller of goods, in themselves innocent, becomes a conspirator with—or, what is in substance the same thing, an abettor of—the buyer because he knows that the buyer means to use the goods to commit a crime." *Id.* at 581. The Court's answer was that if the law was to "impose[ ] punishment [based on conspiracy] merely because the accused did not forbear to do that from which the wrong was likely to follow," the accused's "attitude towards the forbidden undertaking must be more positive." *Id.; see also Falcone*, 311 U.S. at 207, 61 S.Ct. 204 (reiterating the same).

{27} The seller-defendants in *Falcone* were not, it appears, charged with conspiracy with or aiding and abetting any particular distiller to engage in illicit distilling, but rather were charged as being part of, or co-conspirators in, a conspiracy among distillers. *Falcone*, 311 U.S. at 206, 208–10, 61 S.Ct. 204 (clarifying the issue to be "whether one who [with *knowledge of a conspiracy to distill illicit spirits* ] sells materials with knowledge that they are intended for use or will be used in the production of illicit distilled spirits may be convicted as a co-conspirator with a distiller *who conspired* with others to distill the spirits in violation of the revenue laws." (emphasis added)). The evidence came up short on whether the seller-defendants knew of that conspiracy. *Id.* at 206, 210, 61 S.Ct. 204. Thus, the Second Circuit's holding of lack of sufficient evidence must be read in light of the actual issue in that case: sufficiency of the evidence of a seller's knowledge of, and thus participation in, a conspiracy among distillers to engage in illicit distilling.

{28} Three years after the Supreme Court's decision in *Falcone*, the Court decided *Direct Sales*, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674. The Court in *Direct Sales* noted that the parties were "at odds concerning the effect of the *Falcone* decision as applied to the facts proved in [*Direct Sales* ]." *Direct Sales*, 319 U.S. at 705, 63 S.Ct. 1265. "The salient facts [were] that Direct Sales sold morphine sulphate to Dr. Tate in such quantities, so frequently and over so long a period it must have known he could not dispense the amounts received in lawful practice and was therefore distributing the drug illegally. Not only so, but it actively stimulated Tate's purchases." *Id.*

{29} In *Direct Sales*, the defendant attempted to escape conspiracy liability by arguing that its sales to Dr. Tate were no different than the sales in *Falcone* by the seller-defendants to distillers knowing that the distillers would use the goods in illegal distillation. *Direct Sales*, 319 U.S. at 708, 63 S.Ct. 1265. The Court in *Direct Sales* took very specific issue with the defendant's interpretation and application of *Falcone*. The Court pointed out that the evidence in *Falcone* failed to establish that the seller-defendants "knew of the distillers' conspiracy." *Id.* at 708–10, 63 S.Ct. 1265. The Court distinguished *Falcone*, stating that, unlike the circumstances in *Direct Sales*, in *Falcone* "[t]here was no attempt to link the supplier and the distiller in a conspiracy inter sese." *Id.* at 708, 63 S.Ct. 1265. Significantly in terms of *Falcone*'s application to *Direct Sales*, the Court stated:

Petitioner obviously misconstrues the effect of the Falcone decision in one respect. This is in regarding it as deciding that one who sells to another with knowledge that the buyer will use the article for an illegal purpose cannot, under any circumstances, be found guilty of conspiracy with the buyer to further his illegal end. The assumption seems to be that, under the ruling, so long as the seller does not know there is a conspiracy between the buyer and others, he cannot be guilty of conspiring with the buyer, to further the latter's illegal and known intended use, by selling goods to him.

The Falcone case creates no such sweeping insulation for sellers to known illicit

users. The decision comes down merely to this, that one does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally. The Government did not contend, in those circumstances, as the opinion points out, that there was a conspiracy between the buyer and the seller alone. It conceded that on the evidence neither the act of supplying itself nor the other proof was of such a character as imported an agreement or concert of action between the buyer and the seller amounting to conspiracy. This was true, notwithstanding some of the respondents could be taken to know their customers would use the purchased goods in illegal distillation.

319 U.S. at 709, 63 S.Ct. 1265.

{30} It is *Direct Sales,* not *Falcone,* that must lead the way under the facts of the present case. The majority in this case cites *Direct Sales* under a *"cf."* signal and is otherwise silent on its applicability. There can be little question, however, at least from the view of the United States Supreme Court, that there is a significant distinction to be made between the two cases, and that *Falcone* does not create a "sweeping insulation for sellers to known illicit users." *Direct Sales,* 319 U.S. at 709, 63 S.Ct. 1265.

{31} The present case cannot properly be decided based on the view that, as a matter of law, the New Mexico conspiracy statute did not criminalize Defendant's conduct. In my view, the conspiracy statute can be applied to reach a seller of otherwise innocent goods when, as in the present case, the seller knows the buyer, knows that the buyer intends to use the goods for a felonious purpose, intends to financially profit from illicit activity using the goods sold, and has engaged in similar past transactions. Under such circumstances, a jury is entitled to draw reasonable inferences that the defendant intended to facilitate or promote the illicit venture through his investment in order to personally profit from the venture's success. When a seller of goods observes that his past

sales of goods for illicit ventures resulted in his further sales of the same goods for further illicit ventures, that seller can be reasonably viewed as participating in the venture, with a stake in the venture. The extent of the investment, minimal or substantial, should weigh on the minds of the jury, not the court. *See State v. Armijo,* 90 N.M. 10, 11, 558 P.2d 1149, 1150 (Ct.App.1976) ("The size, frequency and manner of the transactions ... were evidence sustaining defendant's conviction for conspiracy ... to traffic in heroin. The jury could properly conclude that the heroin defendant supplied ... was for resale.").

{32} As drawn, Section 30–28–2(A) could not, without interpretation, stand as a basis for conviction. Our Supreme Court read into the statute two mental states required for its application: not only an intent to agree, but also "an intent to commit the offense that is the object of the conspiracy." *State v. Trujillo,* 2002–NMSC–005, ¶ 62, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted); *State v. Baca,* 1997–NMSC–059, ¶ 51, 124 N.M. 333, 950 P.2d 776. This interpretation, of course, added elements and thus proof requirements not all that plain from reading the statute. In conspiracy prosecutions under Section 30–28–2(A), a convicted defendant's appeal will likely include an attack on the sufficiency of the evidence. *See, e.g., State v. Roper,* 2001–NMCA–093, ¶¶ 7–9, 131 N.M. 189, 34 P.3d 133; *State v. Mariano R.,* 1997–NMCA–018, ¶¶ 4–7, 123 N.M. 121, 934 P.2d 315. However, even with our Supreme Court's and our own attempts in the various cases that come before us to scrutinize the sufficiency of the evidence, the majority sees the case before us as one requiring, as a matter of policy, the conspiracy statute to be limited in scope through further judicial interpretation. Under the facts of the present case, I see the issue as sufficiency of the evidence.

{33} Under UJI 14–2810 NMRA, a defendant and another person must both agree together and intend to commit a crime. The committee commentary states that "[t]he offense is complete when the defendant combines with another for felonious purpose" and "[n]o overt act in furtherance of the conspira-

cy need be proved." *Id.; State v. Davis,* 92 N.M. 341, 344, 587 P.2d 1352, 1355 (Ct.App. 1978). "Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Sparks,* 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct.App.1985). The agreement required "can be nothing more than a mutually implied understanding that can be proved by the cooperative actions of the participants involved." *Roper,* 2001–NMCA–093, ¶ 8, 131 N.M. 189, 34 P.3d 133. "This mutually implied understanding may be established by circumstantial evidence." *Davis,* 92 N.M. at 342, 587 P.2d at 1353.

{34} On the occasion in question in this case, Defendant bought and stole from one store almost 500 pseudoephedrine over-the-counter pills, known as Sudafed tablets, for the purpose of selling the pills. He knew the pills were a necessary ingredient in the manufacture of methamphetamine. He sold them to a person he knew and who he knew wanted the pills to manufacture methamphetamine. Defendant's purpose was to make money off the sale transaction. Defendant had engaged in the same sale transactions with the same buyer in the past.

{35} Under the language of the statute, a jury could find that Defendant "knowingly combin[ed] with another for the purpose of committing a felony." § 30–28–2(A). That is, even applying existing judicial interpretation of the statutory elements, a jury could reasonably infer from the evidence that Defendant knew, from past experience selling to the buyer, of the buyer's intent to use the pills to manufacture methamphetamine, thereby intending to agree to the sale for that use. In addition, a jury could reasonably infer that Defendant intended to facilitate the manufacture of the illicit drug, and wanted to see the illicit manufacturing venture successful because of the possibility of being asked to engage in further, similar transactions, through which he could make some money and thereby personally profit. A rational jury could believe that the buyer would not engage Defendant to obtain a large number of pseudoephedrine pills and to sell them to the buyer if the buyer simply

wanted a long-term supply of allergy medication.

{36} Courts in racketeering cases, in which the term " 'enterprise' ... is one of those subjects that the more it is explained— at least in the abstract—the more elusive it becomes," have held that "an enterprise must be more than an individual who conducts his own affairs through a pattern of racketeering." *State v. Rael,* 1999–NMCA–068, ¶¶ 11, 16, 127 N.M. 347, 981 P.2d 280 (internal quotation marks and citations omitted). Similarly, a conspirator must be more than an individual who has done nothing more than sell a lawful product knowing that it will be used for a felonious purpose. In the present case, however, there was evidence of Defendant's knowledge as well as his past and continued involvement in sales and personal profit.

{37} Also, like racketeering cases, where the court interprets the statute to require specific elements to be proven in order to establish the existence of an enterprise, and then examines whether the evidence of an enterprise was sufficient to convict the defendant of racketeering, *id.* ¶¶ 10–15, in the present case, based on court interpretation of the elements required for conviction under the conspiracy statute, and based on the evidence, this Court should examine whether the evidence of intent was sufficient to convict Defendant of conspiracy. *Cf. State v. Mora,* 1997–NMSC–060, ¶¶ 25–28, 124 N.M. 346, 950 P.2d 789 (determining that the appellate court could not say as a matter of law whether a particular felony was inherently dangerous to human life because the decision was necessarily fact-specific and for the jury to decide, subject to appellate review for sufficiency of the evidence, and holding that it was proper for the jury to determine whether the crime of criminal sexual contact was inherently dangerous for purposes of felony murder and that the verdict could be overturned only upon a showing of insufficient evidence); *State v. Barragan,* 2001–NMCA–086, ¶¶ 25–27, 131 N.M. 281, 34 P.3d 1157 (following discussion of the Court's interpretation of the word "structure" in the burglary statute to include a separately secured area of a building otherwise open to

the public, and also the Court's interpretation of the possession of burglary tools statute as not requiring that a defendant be convicted of burglary in order to be held liable for possession, holding that there was sufficient evidence to support a finding that the defendant intended to use a device to make an unauthorized entry of a structure).

{38} I realize that the majority's concern rests on the consequences of permitting a jury under these circumstances to infer a guilty intent to commit the unlawful manufacture of methamphetamine. That concern more particularly is that the State can drag into the web of conspiracy legitimate vendors of lawful products simply because the vendor has been informed that the product will be used for illegal, felonious purposes, where the vendor does not have a stake in the illegal operation other than having received the shelf or legitimate market price of the product at the time of the sale. This case, however, does not involve a conspiracy charge against an employee of a recognized, legitimate retail store, or against the store itself, prosecuted because an employee involved in a sale was told by a customer that the product would be used for felonious purposes. I suspect we would be hard pressed to find a case that would permit a conviction under that circumstance.

{39} So the question is, what more is required for prosecution and conviction? The dividing line would appear to be the extent to which the seller of the innocent product, knowing that the buyer intends to use the product for a felonious purpose, intends to personally profit from continued successful illicit ventures using the product sold. The majority determines that the conspiracy statute is unclear and invokes the rule of lenity. Logically then, no matter the extent of the evidence of continuous sales, the majority would still conclude lack of statutory clarity, and invoke the rule of lenity, as opposed to treating the issue as one of sufficiency of the evidence. Yet at the same time, the majority sends a mixed signal by its warning that its determination "should not be understood as invariably insulating suppliers of goods or services from liability for conspiracy," and, further, that there may be

instances in which sale of lawful goods, "combined with other factors may suffice" as sufficient evidence to convict for conspiracy. Majority Opinion ¶ 14.

{40} The underlying principle behind the majority's decision to abandon sufficiency of the evidence as the basis on which to determine the validity of the jury's verdict of guilt and to determine instead that the wording of the statute "does not criminalize the conduct proved by the State in this case," Majority Opinion ¶ 13, is that, pursuant to the rule of lenity, this Court should view the statute as failing to adequately alert and give clear and unequivocal warning to Defendant of the possibility of prosecution and punishment for conspiracy to manufacture methamphetamine. See id. Thus, the majority's view that the statute does not criminalize Defendant's conduct is, in effect, a policy decision made along these lines: The statute does not tell a person to what extent his or her knowledge and conduct will suffice as unlawful conduct. Therefore, the Court will look at the circumstances of each case and determine whether, applying the rule of lenity, the statute criminalizes the conduct in question. Therefore, in the present case, the Court will determine that the statute does not criminalize the conduct, even though, under the wording of the statute, even as interpreted by our Supreme Court, a jury might rationally infer that Defendant's knowledge, conduct, and intent were sufficient to show intent to facilitate and profit from the manufacture of illegal drugs. It may be that in another case, with other evidence, the statute does criminalize the conduct, in which case the question would then become whether the evidence was sufficient to convict.

{41} The problem with the majority's approach is determining the point at which the statute does criminalize conduct similar to that of Defendant. What evidence is sufficient to permit the jury to draw inferences and conclude guilt? The answer, it seems to me, is that the requisite intent can be inferred from evidence of past sales from which the seller personally profited, the inference being that if the seller engaged in and profited from past sales, knowing the illegal use to be made of the product, and the seller continues to sell expecting the same thing, it is highly probable that the seller

intends to facilitate the illegal operation in order to personally profit from it and to personally profit from future illegal operations. It is not this Court's role to measure the point on the scale at which the number of past sales, the amount of product sold, and the amount of consideration received, tip the balance to permit jury consideration of guilt.

{42} I do not see the benefit or, for that matter, the propriety, of attempting through policy to draw a line between criminal and non-criminal conduct at any point other than perhaps where the only evidence before the jury is that the seller knows that the buyer intends to use the product for an illegal purpose. When there is evidence of ongoing transactions, such as there were in *Direct Sales,* the issue ought to be one of whether there is sufficient evidence for a rational jury to infer that the seller has a stake in the success of the illegal use of the sold, otherwise legal, product, such that the seller intends to personally profit from the ongoing success of illegal ventures. There should be no question that the conspiracy statute criminalizes one who has a stake in the success of an illegal venture by investing capital to assist in making the venture successful with the expectation of ongoing personal profit from not only the present illegal venture subject to the immediate prosecution, but also, based on past experience, from future similar illegal ventures.