2006-NMCA-134

145 P.3d 86

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Valerie KENT, Defendant–Appellant.**

**No. 25,483.**

Court of Appeals of New Mexico.

Aug. 17, 2006.

Certiorari Denied, No. 30,003, Oct. 18, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Ralph E. Trujillo, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant Valerie Kent appeals her conviction of the crime of accessory to attempt to manufacture methamphetamine on

the grounds of insufficient evidence and error in denying admission of a photograph. We affirm.

## BACKGROUND

{2} The State presented three law enforcement witnesses. One or more of the officers witnessed a person they identified as Defendant purchase ten boxes of matches at a convenience store. Knowing that the striker plates on the matchboxes consist of red phosphorous, a key ingredient for the manufacture of methamphetamine, the officers followed Defendant, who was driving a grey Chevy pickup, to a second convenience store where Defendant purchased ten more boxes of matches. The officers then followed Defendant to a third convenience store where she purchased ten more boxes of matches. This occurred once again at a fourth convenience store, where Defendant purchased five more boxes of matches. The officers knew from their training and experience that purchases of large quantities of matchbooks, particularly thirty-five boxes of matches indicated the likelihood of a methamphetamine lab. At least two of the officers involved specifically identified Defendant as the person who purchased the matches.

{3} The officers then followed Defendant to an apartment, where they continued surveillance until almost midnight, when a green minivan pulled up with a female inside. Two officers testified that a white bag was put into the minivan. Another officer testified that the two females transferred items from the pickup to the minivan. The pickup and minivan then left the apartment location and stopped at the residence of Sherman Kent. After that, the two vehicles traveled to a Wal–Mart store. The convenience stores and the Wal–Mart store are located in Portales, New Mexico.

{4} Defendant and the other female, identified as Defendant's sister, Jan Carter, entered Wal–Mart where one or both purchased a gallon of Coleman fuel and a gallon of distilled water. Those items were placed in the minivan. The officers knew that these items were also ingredients used to manufacture methamphetamine. After the purchase, Ms. Carter drove the minivan to Clovis, New Mexico. Defendant and Sherman Kent

drove off in the pickup. The officers followed the minivan to Clovis because the items about which they were concerned were in the minivan. They arrested Ms. Carter and obtained the items they had seen transferred into the minivan. The items included the matchboxes. Early the next morning, Defendant was asked to come to the Portales police station because her sister had been arrested. Defendant agreed to go to the police station. During an interview with the police officers, Defendant admitted that she had purchased all of the matches, that she knew that the matches were going to be used to manufacture methamphetamine, and that she knew that matchboxes were scraped for the red phosphorous that was used in the manufacture of methamphetamine. Defendant also admitted that on previous occasions she had bought matches for her sister for the manufacture of methamphetamine.

{5} At trial, Defendant did not claim that she was not at the apartment where the officers had seen her with her sister, nor did she claim that she did not go to Wal–Mart. Defendant testified that she paid for the items purchased at Wal–Mart. The officer who witnessed the two sisters in Wal–Mart testified that it was Ms. Carter that purchased the items.

{6} However, Defendant testified that it was her sister who purchased the matches at the various convenience stores, and that the officers had mistaken the identity of the person who purchased the matches. In support of this defense, Defendant sought to introduce a photograph of Ms. Carter to show that there was a striking resemblance between the sisters. The district court refused to admit the photograph, agreeing with the State that the evidence should be excluded under Rule 5–508 NMRA for Defendant's failure to give notice of an alibi defense.

{7} Defendant was convicted of accessory to attempt to commit the felony of trafficking a controlled substance by manufacturing. The trafficking crime consists of "manufacture of any controlled substance enumerated in Schedules I through V or any controlled substance analog as defined in Subsection W

of Section 30–31–2 NMSA 1978." NMSA 1978, § 30–31–20(A)(1) (1990) (amended 2006). Methamphetamine is a Schedule II controlled substance. NMSA 1978, § 30–31–7(A)(3)(c) (2005). Manufacture "means the production, preparation, compounding, conversion or processing of a controlled substance." NMSA 1978, § 30–31–2(M) (2006). "Attempt to commit a felony consists of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." NMSA 1978, § 30–28–1 (1963).

{8} The jury was instructed that to convict Defendant of attempt to manufacture methamphetamine it had to find, beyond a reasonable doubt, that (1) Defendant intended to commit the crime of trafficking a controlled substance (methamphetamine) by manufacturing, and (2) Defendant began to do an act that constituted a substantial part of the crime of trafficking a controlled substance (methamphetamine) by manufacturing but failed to commit the crime of trafficking a controlled substance (methamphetamine) by manufacturing. *See id.;* UJI 14–2801 NMRA. The jury was also instructed that it could convict Defendant of attempt to manufacture under a theory of accessory liability if it found, beyond a reasonable doubt, that (1) Defendant intended that the crime be committed, (2) an attempt to commit the crime was committed, and (3) Defendant helped, encouraged, or caused the attempt to commit the crime. *See* NMSA 1978, § 30–1–13 (1972); UJI 14–2820 NMRA.

{9} Defendant claims on appeal that the conviction was based on insufficient evidence and that the district court's refusal to admit the photograph of Ms. Carter was error and violated Defendant's due process right to present a defense.

## DISCUSSION

### A. The Evidence Was Sufficient

### 1. Standard of Review

▮ {10} Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988); *State v. Brenn,* 2005–NMCA–121, ¶ 4, 138 N.M. 451, 121 P.3d 1050. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt. *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992); *Brenn,* 2005–NMCA–121, ¶ 4, 138 N.M. 451, 121 P.3d 1050. "We view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993); *Brenn,* 2005–NMCA–121, ¶ 4, 138 N.M. 451, 121 P.3d 1050. Appellate courts do not weigh the evidence or substitute any judgment for that of the jury. *State v. Lankford,* 92 N.M. 1, 2, 582 P.2d 378, 379 (1978); *Brenn,* 2005–NMCA–121, ¶ 4, 138 N.M. 451, 121 P.3d 1050.

▮ {11} We review de novo whether an insurmountable statutory ambiguity persists such that we should apply the rule of lenity. *See State v. Davis,* 2003–NMSC–022, ¶¶ 6, 14–15, 134 N.M. 172, 74 P.3d 1064; *see also State v. Rael,* 1999–NMCA–068, ¶ 5, 127 N.M. 347, 981 P.2d 280 (recognizing that review of a district court's denial of a motion for directed verdict may turn upon resolution of matters of statutory interpretation, subject to de novo review).

### 2. The Merits of the Sufficiency Issue

▮ {12} Defendant contends that "[t]he State failed to prove that [Defendant] took a single step toward manufacturing methamphetamine, let alone 'an act that constituted a substantial part of manufacturing.'" Defendant argues: (1) the purchase of boxes of matches is not producing, preparing, compounding, converting or processing; (2) there is no evidence that Defendant went to Ms. Carter's home in Clovis or that the officers found any necessary ingredients inside that home for manufacture of methamphetamine by any means; and (3) there is no evidence as to the amount of red phosphorous needed to manufacture methamphetamine, why the number of matches is relevant, or that the boxes of matches purchased were altered in any way.

{13} In addition, Defendant contends that under the rule of lenity this Court should conclude that Section 30–28–1 should not be extended to this circumstance of "an otherwise lawful purchase of goods given to someone that may or may not use them for an illegal purpose." Defendant analogizes the circumstances in this case to those involving the conspiracy charge in *State v. Maldonado,* 2005–NMCA–072, 137 N.M. 699, 114 P.3d 379. The issue in *Maldonado* was "a recurring question in the law of conspiracy[.]" *Id.* ¶ 9. The majority considered the issue to be one of statutory construction, subject to de novo review. *Id.* In *Maldonado,* the Court held that the crime of conspiracy as defined and intended by the Legislature did not extend to the defendant's actions and knowledge. *See id.* ¶¶ 13, 18. In *Maldonado,* the defendant purchased one box and was in the process of attempting to shoplift four more boxes of pseudoephedrine tablets with the intent to sell them to another person whom he knew used such goods for the manufacture of methamphetamine. *Id.* ¶¶ 2–3. Defendant also argues that "Section 30–28–2(A) does not clearly and unequivocally alert a person in [Defendant's] position to the possibility of prosecution and punishment as an accessory to an attempt to manufacture methamphetamine" under the circumstances in this case. NMSA 1978, § 30–28–2(A) (1979) sets out the definition of conspiracy. Because conspiracy was not charged in the present case, we assume that Defendant meant to refer to Section 30–28–1.

{14} The evidence most favorable to the verdict, with all reasonable inferences indulged in favor of the verdict, shows or gives rise to reasonable inferences that Defendant took steps and overtly acted in furtherance of manufacturing methamphetamine. That evidence is that Defendant purchased thirty-five boxes of matches from several different stores, one right after the other; that the matchboxes contain red phosphorous, a key ingredient in the manufacture of methamphetamine; that Defendant bought the boxes of matches for her sister and turned them all over to her sister; that Defendant knew that the matchboxes were scraped for red phosphorous and she knew the substance was used in the manufacture of methamphet-

amine; that the matchboxes were going to be used in the manufacture of methamphetamine; and that together with her sister she purchased or financed the purchase of other products that were ingredients commonly used in the manufacture of methamphetamine, namely, Coleman fuel and distilled water.

{15} We have no doubt that a rational jury could reasonably infer from the evidence, and conclude beyond a reasonable doubt, that Defendant's actions constituted a substantial part of trafficking activity, including acting as an accessory by intending that the crime be committed and by helping, encouraging, or causing an attempt to commit the crime. *See Brenn,* 2005–NMCA–121, ¶ 14, 138 N.M. 451, 121 P.3d 1050 (stating that "even slight acts in furtherance of the crime will constitute an attempt" (alteration omitted) (internal quotation marks and citation omitted)); *see also State v. Carrasco,* 1997–NMSC–047, ¶ 7, 124 N.M. 64, 946 P.2d 1075 (stating that "intent can be inferred from behavior which encourages [an] act"); *State v. Bankert,* 117 N.M. 614, 619, 875 P.2d 370, 375 (1994) ("Intent may be proved by inference from the surrounding facts and circumstances." (internal quotation marks and citation omitted)).

{16} Relying on *Maldonado,* Defendant argues that we should apply the rule of lenity. We disagree. "The rule of lenity counsels that criminal statutes should be interpreted in a defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." *Davis,* 2003–NMSC–022, ¶ 14, 134 N.M. 172, 74 P.3d 1064. The holding in *Maldonado* is limited to its facts and to the conspiracy statute at issue in the case. *See Maldonado,* 2005–NMCA–072, ¶¶ 8, 9, 14, 137 N.M. 699, 114 P.3d 379. The facts and statute at issue in *Maldonado* distinguishes it from the present case. Not only was the holding specific to the "recurring question in the law of conspiracy," *id.* ¶ 9, critical in *Maldonado* was the distinction between "merely *knowing* that the purchaser may commit a felony and sharing the purchaser's *purpose* to commit a felony." *Id.* ¶ 19. In the present case, there was evidence from which the jury could rationally and reasonably have inferred and

concluded that Defendant knew about the intended use of the items purchased. The State did not have to prove the element necessary for a conspiracy conviction, namely that Defendant and her sister had a shared purpose in regard to manufacturing methamphetamine. In addition, Section 30–28–1 is not rendered ambiguous, unclear, or lacking in notice, merely because the act in furtherance of the crime consists in part of the purchase of otherwise lawful goods. We see no insurmountable ambiguity or even a lack of clarity in Section 30–28–1 that would require application of the rule of lenity in this case. The jury could have rationally and reasonably fit the facts of the present case into the elements of the attempt statute. There exists no need to or purpose to be gained by attempting to limit the scope of Section 30–28–1 in this case, or to apply the rule of lenity.

{17} We hold that there was sufficient evidence to convict Defendant of attempted manufacture of methamphetamine.

## B. The Photograph Was Properly Excluded

### 1. Standard of Review

{18} We examine the admission or exclusion of evidence for abuse of discretion, and the district court's determination will not be disturbed absent a clear abuse of discretion. *State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). An abuse of discretion occurs when the discretionary act is illogical, unreasonable, or contrary to facts and circumstances before the court. *State v. Montoya*, 2005–NMCA–078, ¶ 22, 137 N.M. 713, 114 P.3d 393. An appellate court "cannot say the trial court abused its discretion by its ruling unless [it] can characterize it as clearly untenable or not justified by reason." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995).

### 2. The Merits of the Evidence Issue

{19} The district court refused admission of Ms. Carter's photograph because Defendant had not given notice of alibi as required under Rule 5–508, which states in relevant part:

A. **Notice.** In criminal cases ... upon the written demand of the district attorney, ... a defendant who intends to offer evidence of an alibi ... as a defense shall, not less than ten (10) days before trial or such other time as the district court may direct, serve upon such district attorney a notice in writing of the defendant's intention to introduce evidence of an alibi....

. . . .

D. **Failure to give notice.** If a defendant fails to serve a copy of such notice as herein required, the court may exclude evidence offered by such defendant for the purpose of proving an alibi, except the testimony of the defendant himself.

In the present case, the State served a written demand five months before trial that required Defendant to serve a notice of any alibi Defendant intended to assert as a defense. Defendant failed to respond to the State's written demand.

{20} The district court has discretion to preclude evidence as a sanction for failure to comply with a demand for notice of alibi. Rule 5–508; *see State v. Watley*, 109 N.M. 619, 621, 788 P.2d 375, 377 (Ct.App. 1989). In asserting the defense that it was her sister that purchased the matchboxes, Defendant contends that the defense is one of mistaken identity, not that of alibi. Alternatively, Defendant contends that even if the defense is that of alibi, the district court abused its discretion by not declaring a mistrial because Defendant's counsel's failure to give notice of alibi constituted ineffective assistance of counsel.

{21} We are unpersuaded by Defendant's argument that the mistaken identity defense she asserts is not an alibi defense. In essence, the defense was that, during the time in question, she was not in the convenience stores but, rather, was at her sister's apartment watching her sister's grandchildren, and therefore, because of the close resemblance of the sisters, it was easy for the officers to have mistaken her (Defendant) as the one purchasing the matchboxes. We agree with the State that her mistaken identity argument is simply evidence to support

her alibi, notice of which she was obliged to give.

{22} As to the district court's application of Rule 5–508 to exclude the photograph, Defendant nowhere indicates that she sought a district court analysis and balancing of "the potential for prejudice to the prosecution against the impact on the defense and whether the evidence might have been material to the outcome of the trial." *Watley*, 109 N.M. at 621, 788 P.2d at 377 (internal quotation marks and citation omitted). She sets out no such analysis on appeal. She simply argues that the photograph was "worth a thousand words" and was highly probative on an issue central to her defense: "mistaken identity." Defendant provides no facts or argument to persuade us that admission of the photograph might have been material to the outcome of the trial. We cannot fault the district court under the abuse of discretion standard for denying admission of the photograph. The photograph could reasonably have been considered cumulative evidence, with its exclusion non-prejudicial, in that in addition to Defendant's testimony that she and her sister looked remarkably similar, two officers who testified agreed that Defendant and Ms. Carter closely resembled one another. Furthermore, the testimony of the officers as to Defendant's identity was unequivocal. The officers positively identified Defendant as the person who purchased the matchboxes and testified as to the differences they saw between the two women that distinguished them. Moreover, Defendant admitted in an interview that it was she (Defendant) who purchased the matches.

{23} Further, Defendant did not establish a prima facie case of ineffective assistance of counsel. *See State v. Baca*, 1997–NMSC–059, ¶ 24, 124 N.M. 333, 950 P.2d 776 (stating that a defendant has the burden of overcoming the presumption of effective assistance of counsel). A prima facie case of ineffective assistance of counsel is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, as a result of that deficient performance, the defense was prejudiced. *Id.* To establish prejudice, Defendant must show that there is a reasonable probability that, but for the deficient representation, the result would have been different. *State v. Dartez*, 1998–NMCA–009, ¶ 26, 124 N.M. 455, 952 P.2d 450.

{24} We need not address the first prong of the test, whether counsel's performance was deficient. Defendant failed to establish a prima facie case of prejudice. The officers had no difficulty identifying Defendant or distinguishing Defendant and her sister. Defendant had adequate opportunity to argue mistaken identity based on her own testimony, and that of the officers, that Defendant and her sister looked alike, and that it was her sister who purchased the matchboxes. Defendant, as well, made very damaging admissions. Defendant has shown nothing to persuade us that admission of the photograph would have changed the result.

## CONCLUSION

{25} We affirm Defendant's conviction.

{26} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JAMES J. WECHSLER, Judges.