This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **NO. 33,501**

**ALEJANDRO JAKE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Olga Serafimova, Assistant Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

{1}     Defendant Alejandro Jake appeals from his convictions for driving while under the influence of intoxicating liquor (DWI), first offense, contrary to NMSA 1978, Section 66-8-102(A) (2010), and stop sign violation, contrary to NMSA 1978, Section 66-7-345(C) (2003). Defendant was convicted pursuant to a bench trial in the metropolitan court, which convictions were affirmed by the district court in an on-record appeal. On appeal to this Court, Defendant argues that the State failed to prove beyond a reasonable doubt that Defendant (1) consumed alcohol that caused his driving to be impaired and (2) violated the law when he drove past a stop sign without coming to a complete stop. Because we conclude that there was sufficient evidence to support Defendant's convictions, we affirm.

{2}     We initially address the State's objection to this Court's jurisdiction to hear this appeal, following Defendant's convictions in metropolitan court and on-record appeal to the district court. The State contends that this argument is currently pending before the New Mexico Supreme Court in *State v. Armijo*, 2014-NMCA-013, 316 P.3d 902, *cert. granted*, 2013-NMCERT-012, 321 P.3d 127. Contrary to the State's contention, however, this Court has jurisdiction over this case because this Court has "jurisdiction over appeals in criminal actions originating in courts of limited jurisdiction[,]" including "appeals in all criminal actions with the limited exception of those where a sentence of death or life imprisonment is imposed[,]" regardless of whether the appeal derived from an on-record appeal from the district court. *State v. Carroll*, ___-

NMCA-___, ¶ 5, ___ P.3d ___ (No. 32,909, Oct. 21, 2013). Although the State contends that this issue is currently being challenged in the Supreme Court, "a Supreme Court order granting the petition does not affect the precedential value of an opinion of the Court of Appeals, unless otherwise ordered by the Supreme Court." Rule 12-405(C) NMRA; *see Gulbransen v. Progressive Halcyon Ins. Co.*, 2010-NMCA-082, ¶ 13, 148 N.M. 585, 241 P.3d 183 (stating that a formal Court of Appeals opinion is controlling authority, even when the New Mexico Supreme Court has granted certiorari in the case). Having jurisdiction over this appeal, we therefore proceed to the merits.

**BACKGROUND**

{3}     Deputy Asbury was the only source of testimony at the bench trial in the metropolitan court, and the material facts are undisputed. According to Deputy Asbury's testimony, on July 26, 2010, around 10:40 p.m., Deputy Asbury was parked on University near the Journal Pavilion after a concert had let out. Deputy Asbury observed a vehicle exit the parking lot and turn onto University from the connecting access road without stopping at a stop sign. Deputy Asbury turned on his emergency equipment and stopped Defendant for failing to come to a complete stop at the stop sign. Deputy Asbury informed Defendant that he stopped him for driving past the stop sign without coming to a complete stop, "not even a pausing stop." Defendant responded that the parking lot attendant told him "to drive, or to go, something like

3

that." Deputy Asbury acknowledged that parking lot attendants are typically placed in the Journal Pavilion parking lot during concerts but testified that "when [Defendant] passed by the stop sign, no officer was stationed specifically at the stop sign directing traffic." Rather, Deputy Asbury indicated that a parking attendant may have been approximately 100 feet from the stop sign.

{4}     Deputy Asbury testified that, after the stop, when he asked Defendant for his license, insurance, and registration papers, Defendant produced the papers without any difficulty. However, upon making contact with Defendant, Deputy Asbury did smell an "odor of alcohol coming from the passenger compartment of the car that was occupied by two people." Deputy Asbury also noted that Defendant had bloodshot, watery eyes and slurred speech. Deputy Asbury asked Defendant if he had consumed any alcohol, and Defendant responded that he had not. Nevertheless, based on Deputy Asbury's observations, he asked Defendant to complete a pre-exit test and instructed him to count backwards out loud from sixty-eight to fifty-three. Defendant failed to follow Deputy Asbury's instructions, starting instead at sixty-seven and skipping sixty. Accordingly, Deputy Asbury asked Defendant to exit the vehicle and perform standardized field sobriety tests (FSTs). Deputy Asbury testified that Defendant did not exhibit difficulty in exiting the vehicle and moving to the testing area.

{5}     Deputy Asbury testified that Defendant stated that he did not have any injuries and that Deputy Asbury did not notice any. Deputy Asbury further testified that the

4

testing area was smooth asphalt, flat and free of debris, and the night was warm and not windy. Deputy Asbury used the lights of his patrol vehicle for testing. Prior to each test, Deputy Asbury explained and demonstrated the test and confirmed that Defendant understood the test.

{6} On the first FST, the horizontal gaze nystagmus (HGN), Defendant failed to follow Deputy Asbury's instructions by moving his head several times, for which Deputy Asbury had to correct Defendant. Deputy Asbury did not note any other problems with Defendant's performance on the HGN. On the second FST, the walk-and-turn (WAT), Defendant failed to follow Deputy Asbury's instructions by stepping off the line once, missing heel-to-toe three times, and doing an improper "spin" turn. On the third FST, the one-legged stand (OLS), Defendant failed to follow Deputy Asbury's instructions by raising his arms approximately six inches away from his body for balance. Deputy Asbury also testified that Defendant swayed obviously during the OLS, although he had not specifically instructed Defendant not to sway. Based on Deputy Asbury's personal, trained observations and experience, as well as the totality of his observations, Deputy Asbury placed Defendant under arrest.

{7} The State tried this case by bench trial in the metropolitan court. The court denied Defendant's motion for directed verdict on both the DWI and the stop sign violation, finding that the State made a prima facie case for both charges. Defendant argued in closing that there were other plausible explanations for the bloodshot,

5

watery eyes, the slurred speech, the odor of alcohol coming from the passenger compartment of the vehicle, and the failure to follow the instructions on the FSTs; however, the court apparently found that such other explanations were not persuasive and found that there was sufficient evidence to convict Defendant of both charges. The district court affirmed the metropolitan court in an on-record appeal. Defendant appeals.

**DISCUSSION**

{8}     On appeal, Defendant argues that the State failed to prove the convictions beyond a reasonable doubt—in other words, that there was insufficient evidence to support the convictions.

**Standard of Review**

{9}     "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citation omitted).

**DWI**

{10}    In order to convict Defendant of DWI under Section 66-8-102(A), the State needed to prove beyond a reasonable doubt that Defendant operated a motor vehicle while under the influence of intoxicating liquor on or about the date in question. *See* UJI 14-4501 NMRA; *see also* § 66-8-102(A) (stating that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state"). The uniform jury instructions clarify that, for the fact finder to find a defendant guilty, the state must prove to the fact finder's satisfaction beyond a reasonable doubt that the defendant was operating a motor vehicle while, "as a result of drinking liquor[,] the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public[.]" UJI 14-4501.

{11}    According to Deputy Asbury's testimony, there was an odor of alcohol coming from the vehicle containing two people, including Defendant; Defendant had bloodshot, watery eyes and slurred speech; Defendant made two errors while attempting to count backwards from sixty-eight to fifty-three; Defendant swayed obviously during the OLS; and Defendant failed to follow Deputy Asbury's instructions in all three FSTs, including having to be corrected during the HGN several times for moving his head; missing steps, stepping off the line, and doing a "spin" turn during the WAT; and raising his arms for balance during the OLS.

7

Viewing this testimony "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict[,]" and considering direct and circumstantial evidence, *Cunningham*, 2000-NMSC-009, ¶ 26; *Kent*, 2006-NMCA-134, ¶ 10, we hold that this evidence is sufficient to support the trial court's determination that the State proved beyond a reasonable doubt each of the elements essential for a conviction for DWI—specifically that, as a result of drinking liquor, Defendant was less able to the slightest degree, mentally and physically, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public. *See* UJI 14-4501; *see also City of Portales v. Shiplett*, 1960-NMSC-095, ¶ 3, 67 N.M. 308, 355 P.2d 126 (holding that there was substantial evidence to support a conviction of driving while under the influence of alcohol based on the facts that the defendant drove down a one-way street in the direction opposite the flow of traffic; the officer smelled alcohol on the defendant's breath; the defendant staggered when he walked, had difficulty in dialing the telephone, and talked with difficulty; and, in the opinion of the officer, the defendant was under the influence of alcohol when arrested); *State v. Neal*, 2008-NMCA-008, ¶ 29, 143 N.M. 341, 176 P.3d 330 (holding that sufficient evidence supported a verdict of DWI based on evidence that "the officer observed [the d]efendant veer over the shoulder line three times, [the d]efendant smelled of alcohol and had bloodshot and watery eyes, [the d]efendant admitted drinking, [the d]efendant

showed signs of intoxication during the field sobriety tests, including that he swayed, he did not follow the officer's instructions on any of the tests, he lifted his arms away from his side during the one-leg stand test, and he 'failed to maintain the stance' during the walk-and-turn test, and the officer believed [the d]efendant was under the influence of alcohol"); *State v. Notah-Hunter*, 2005-NMCA-074, ¶¶ 6, 18, 23-24, 137 N.M. 597, 113 P.3d 867 (concluding that sufficient evidence existed to find the defendant guilty of DWI based on evidence that the officer believed the defendant was speeding and traveling down the center of the roadway and that, "after pulling [the d]efendant over, [the officer] could smell a 'strong odor' of alcohol and noticed that [the d]efendant's speech was slurred[; the d]efendant admitted that she had been drinking and that she staggered and leaned on the car for support"; and the defendant failed the "finger-count and one-legged-stand field sobriety tests").

{12}     Although Defendant provides alternative explanations for the evidence—such as that he was "told . . . to go" by the parking attendant, explaining why he failed to stop at the stop sign, or that Deputy Asbury did not know Defendant well enough to judge Defendant's eyes, scent, speech, or performance on the FSTs—it was for the fact finder to resolve any conflicts in the testimony and to determine where the weight and credibility lay. *State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482; *see also State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156 ("This court does not weigh the evidence and may not substitute its judgment for that

9

of the fact finder so long as there is sufficient evidence to support the verdict." (internal quotation marks and citation omitted)). Moreover, Defendant's arguments that the evidence is insufficient to show that Defendant "drank alcohol" because he did *not* have problems with various other aspects involved in the stop is unavailing. Although it is true that there is no testimony that Defendant had difficulties with providing his paperwork, exiting his vehicle, and performing some aspects of the FSTs, Deputy Asbury did testify that Defendant had bloodshot, watery eyes; had slurred speech; came from the passenger compartment of a vehicle that smelled of alcohol; failed to correctly count backwards from sixty-eight to fifty-three; and failed to follow instructions with regard to some aspects of the FSTs. As discussed herein, such evidence is sufficient to uphold Defendant's conviction. The fact that the court could have come to a different conclusion based on the evidence is immaterial; the question is whether the trial court's "decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

{13}    To the extent Defendant argues that Deputy Asbury's testimony regarding Defendant's failure to follow his instructions does not meet the standards required for "clues" or "cues" based on the National Highway Traffic Safety Administration manual, we decline to address this argument because it was not preserved for argument at trial. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d

10

1280 ("In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)). Likewise, to the extent Defendant attacks the scientific validity of the FSTs or whether they are intended to show driving impairment or correlation to blood alcohol levels, we decline to address these arguments because they were not preserved below. *See id.*

**Stop Sign Violation**

{14} Defendant argues that the State failed to establish beyond a reasonable doubt that Defendant violated the law when he drove past a stop sign without coming to a complete stop. Defendant was convicted pursuant to Section 66-7-345(C), which provides in pertinent part:

> Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway before entering the intersection.

{15} It is undisputed that Defendant drove past a stop sign without coming to a complete stop or even slowing down. Defendant argues that there is no violation, however, because he had an excuse for failing to stop at the stop sign—a parking lot attendant instructed him "to drive, or to go, something like that." Defendant contends

11

that there was no violation because NMSA 1978, Section 66-7-104(A) (1978), states that drivers shall obey the instructions of traffic-control devices unless otherwise directed by a traffic or police officer. However, there is no evidence that any traffic or police officer directed Defendant to drive through the stop sign without stopping.

{16}     Section 66-7-345(C) states that drivers shall obey stop signs except when directed to proceed by a police officer or traffic-control signal. Similarly, Section 66-7-104(A) states in pertinent part that "[t]he driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto . . . unless otherwise directed by a traffic or police officer[.]" Defendant does not argue that there were any traffic-control signals; instead, Defendant argues that the parking lot attendant "may have been [a] traffic officer" and, as such, he was directed by a traffic officer to proceed through the stop sign without stopping. However, there was no evidence presented at trial that Defendant was directed to proceed through the stop sign without stopping by a parking lot attendant, traffic officer, or police officer; rather, there was only evidence that a parking lot attendant, situated at least 100 feet in front of the stop sign, may have directed Defendant to drive, or to go. Although Defendant has attempted to re-characterize the testimony by stating that "the parking lot attendant had directed [Defendant] to go through the stop sign," such characterization is unsupported by the only testimony at trial—Deputy Asbury's testimony that Defendant told him that the parking lot attendant told him "to drive, or

12

to go, something like that." Indeed, the trial court rejected defense counsel's characterization of the testimony by stating during Defendant's closing argument that Deputy Asbury "had agreed that [Defendant] told him that the parking attendant 'told him to go' rather than to 'run the stop sign.' " *See Cochran*, 1991-NMCA-051, ¶ 8 ("Argument of counsel is not evidence."). "The fact finder may reject [the] defendant's version of the incident[,]" *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314, and we will not re-weigh the evidence on appeal nor substitute our judgment for the trial court's when there is sufficient evidence. *Griffin*, 1993-NMSC-071, ¶ 17.

{17} Thus, viewing the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict[,]" and considering both direct and circumstantial evidence, *Cunningham*, 2000-NMSC-009, ¶ 26; *Kent*, 2006-NMCA-134, ¶ 10, we hold that the evidence was sufficient to support the trial court's determination that the State proved beyond a reasonable doubt that Defendant violated Section 66-7-345(C) by driving through a stop sign without first stopping.

**CONCLUSION**

{18} For the foregoing reasons, we affirm Defendant's convictions for driving while under the influence of intoxicating liquor, first offense, and stop sign violation.

{19} **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**

_____

**M. MONICA ZAMORA, Judge**